CASE 78—CONTROVERSY BETWEEN JOHN F. BUTLER AND A. B. STEPH-
ENS, TO DETERMINE WHICH OF THEM SHALL PERFORM THE DUTIES
OF COMMONWEALTH'S ATTORNEY FOR FLOYD COUNTY.

# Butler v. Stephens.

APPEAL FROM FLOYD CIRCUIT COURT.

D. W. GARDNER, CIRCUIT JUDGE, JUDGMENT FOR STEPHENS. BUTLER
APPEALS.—AFFIRMED.

STATES—JUDICIAL DISTRICTS—ESTABLISHMENT—OFFICERS—SALARIES
—REDUCTION DURING TERM— STATUTES.

1. There being no provision of law for a State census, Const.
   sections 128, 132, 138, etc., providing for the division of the
   State into judicial districts based on population, refers to the
   federal census.
2. Const. section 128, requires the Legislature to divide the State
   into judicial districts having regard to the business, territory,
   and population, and provides that in making such apportion-
   ment the number of districts, excluding those in counties hav-
   ing a population of 150,000, shall not exceed one district for
   each 60,000 of the population of the entire State. Section 132
   declares that, when deemed necessary, the General Assembly
   may establish additional districts, but the whole number of
   districts exclusive of counties having a population of 150,000,
   shall not exceed at any one time one for every 60,000 of popu-
   lation of the State according to the last enumeration; and
   section 138 provides that each county having a city of 20,000
   inhabitants, and a population, including the city, of 40,000 or
   more, may constitute a district, and when its population
   reaches 75,000 the General Assembly may provide that it shall
   have an additional judge, and may have a judge for each ad-
   ditional 1,000 above 100,000. At the last census of 1900 the
   population of the State was 2,147,174, and the only county of
   the State then having a population of 150,000 or over was Jeffer-
   son county. HELD, that the inhibition of the Constitution was
   not against the size of the districts except where a single coun-
   ty may constitute a district, and hence under the existing pop-
   ulation, the Legislature was entitled to divide the State into
   31 judicial districts.
3. Under such sections the fact that the Thirty-First District, so
   created, contained only 36,292 population, did not affect its val-

Butler v. Stephens.

idity, the public policy involved therein being a question of exclusive legislative cognizance

4. Const. section 235, provides that the salaries of public officers shall not be changed during their term of office, and section 98 declares that the compensation of the Commonwealth's attorney shall be by salary $500 per annum, payable out of the State treasury, and such percentage of fines and forfeitures as may be fixed by law. HELD, that an act creating an additional judicial district, the effect of which was to withdraw one of the counties from the district in which complainant was commonwealth's attorney during his term of office, and lessen the amount of fines and penalties he would have otherwise have received, but which did not diminish his salary of $500 nor the "percentage" of fines and forfeitures to which he was entitled, was not in violation of such constitutional provisions.

W. O. BRADLEY, FOR APPELLANT.
JAMES GOBLE, OF COUNSEL.

## POINTS AND AUTHORITIES CITED.

1. The Constitution prohibits the formation of any judicial district aside from these in counties where cities are situated which contain less than 60,000 inhabitants. Sections 128, 129, 132, 134, 137, 138. Public Acts, page 125, 1904.

2. The court will take judicial knowledge of who the officers of the State are, the judicial districts, their territory and population, of the public acts of public officers, of distances, of the history or geography of the country. Russell v. Sargeant, 7 Ill. App., 7 Bradw., 98; Cincinnati I. St. L. & C. Ry. Co. v. Grame, 8 Ind. App., 112,( 34 N. E., 613); State v. Ray, 97 N. C., 510 (1 S. E., 876); Kilpatrick v. Comth., 31 Penn. St., (7 Casey), 198; Hancock v. Town of Worcester, 62 Vt., 106 (18 At., 1041); Vahle v. Brackensieck, 145 Ill., 231, 34 N. E., 524, In re Hackley, 21 How. Prac., 103; C., B. & Q. R. Co. v. Hyatt, 48 Neb., 161, 61 N. W., 8; State v. Ray, 97 N. C., 510, 1 S. E., 876; Armstrong v. U. S., 80 U S. (13 Wall.), 154, L. Ed., 614; Jenkins v. Collard, 145 U. S., 546, 12 Sup. Court, 868, 36 L. Ed., 812; Dunning v. New Albany, &c., 2 Ind. (2 Cart), 437; Wells v. Missouri P. Ry., 110 Mo., 286, 19 S. W., 530, 15 L. R. A., 547; Jones v. U. S., 137, U. S., 202, 11 Sup. Ct., 80, 34 Law Ed., 691; Smith v. Same, 137 U. S., 224, 11 Sup. Ct., 88, 34 L. Ed., 700; Key v. Same, Id.; McConnell v. Bowdry, 4 Mon., 394; Hart v. Bodley, Hard., 98; Creighton v. Bilbo, 1 Mon., 140; Barnett v. Godshaw, 12 Bush, 597; Powers v. Commonwealth, 22 Ky. Law Rep., 1807; Kennedy v. Commonwealth, 78 Ky., 447; Powers v. Commonwealth, 22 Ky. Law Rep., 1807.

ADDITIONAL AUTHORITIES CITED BY JAMES GOBLE.

Present Constitution sections 97, 98, 235, 59, sub. .sec. 18, 161, 120, 132, 138; Kentucky Statutes sec. 124; Comth. v. Addams, 95 Ky., 588; San Juan County v. Oliver, 7 Colo. App., 515; Fulgham v. Lightfoot, 1 Call. Va., 225; Vol. 23 2d ed. Am. & Eng. Enc., p. 385; Windmill v. People, 78 Ill., 273; Hamberger v. Marcius, 157 Pa.; Commonwealth v. Butler, 99 Pa. St., 542; Debates in Con. pp. 4202, 4203, 4236, vol. 3; Col. on Con. Lim., page 78; Bouvier Dict. word Salary and Special; L. R. A., Vol. 21, p. 634; Thompson v. Carr, 13 Bush, 216; Vol. 6, Am .& Eng. Enc., p. 926; Marbury v. Madison, 1 Cranch U. S., 174; People v. Angle, N. Y., 564; Hoke v. Comth., 79 Ky., 567; Gayle v. Owen County Court, 83 Ky., 61; McArthur v. Nelson, 81 Ky., 67; Rigers v. Jacob, 88 Ky., 502.

B. G. WILLIAMS, HAZELRIGG. CHENAUTT & HAZELRIGG, GEORGE B. GARDNER and J. J. C. BACH, ATTORNEYS FOR APPELLEE.

1. We submit that the question sought to be decided is not presented in this record in such form as to authorize this court to judicially pass upon it. The action of the lower court in the absence of issues presented to it by the contending parties, could not be the subject of an appeal. There must be a case or a proceeding in court which tangibly presents the issues of law and fact to the court for decision. No such proceeding is shown here, and we insist there is no judgment, below, from which an appeal lies.

2. There is no such thing in our practice as presumptive pleadings, and unless a party shall state his case by a proper pleading the court can not upon its presumed knowledge of the facts. grant him any relief.

3. Assuming, however, that there is an issuable controversy before the court, it is apparent that the bone of contention in this case is not the right to act as Commonwealth attorney in the Floyd Circuit Court, but to have the act creating the 31st Judicial District declared unconstitutional. If that question was ever an open or debatable one, it is now firmly settled by this court in the recent case of Adams v. Roberts.

4. It could not have been intended by the framers of the Constitution that mere possibilities of loss of fees should prevent wholesome legislation for the good of the State, when expressly authorized by that instrument.

5. As the office of Commonwealth's Attorney might under the Constitution be entirely abolished (see sec. 108), the taking away from a judicial district of one county by the Legislature

may be regarded as an abolishment of said office to that extent, and although the term of the office, which is fixed by the Constitution at six years, can not be abridged, yet it is well settled that the Legislature, when authorized to create new political organizations, as counties, towns, &c., may abolish old organizations, although the effect is to abolish offices existing under the old political organizations, whose terms are fixed by the Constitution, and this, though such offices are abolished during the term of the existing incumbents　People v. Morrell, 21 Wend. (N. Y.), 563; Gertum v. Kings County, 109 N. Y., 170.

6. While it sometimes devolves on the courts to abrogate an enactment of the legislative department of the government, this duty is always approached with caution, and the power is never exercised unless deemed imperative when the question is so presented as to leave a judiciary no escape from deciding it.

### CITATIONS.

Louisville Canal Co. v. Murphey, 72 Ky., 552; Stevens v. Baker, 87 Ky., 508; Murphey v. Estes, 69 Ky., 532; Murrill v. McAllister, 79 Ky., ——; Boone v. Chiles, 10th Peters, 399; Gentry v. U. S., 101 Fed. Rep., 51; Patterson v. Miller, 59 Ky., 497; Taylor v. Comm., 26 Ky., 401; Newcum v. Curtley, 52 Ky., 416; Cooley on Con. Lim., pages 67 to 71; Sedgwick on the Statutory and Con. Lim., pages 51-53; Jones v. Sizemore, 25 R., 1957; Thompson v. Carr, 13 Bush, 215; Comm. v. Adams, 95 Ky., 588; Lapsby v. Brashears, 4 Litt, 52.

OPINION OF THE COURT BY JUDGE O'REAR— AFFIRMING.

The Twenty-fourth Judicial District, prior to 1904, was composed of the counties of Floyd, Johnson, Knott, Martin, and Pike. In 1903, at the regular election, a circuit judge and commonwealth's attorney were elected and commissioned for the term of six years, and entered upon the discharge of their duties. Appellant was the Commonwealth's attorney elected for that district at that time. At the regular session of the Legislature held in 1904 there was erected a new district—the Thirty-first—which was made to compromise the counties of Floyd, Knott, and Magoffin. The Governor appointed appellee as Commonwealth's attorney in the Thirty-first District until the next succeeding regular election, who

qualified and entered upon the discharge of his duties. This appeal presents for decision the controversy between appellant, John F. Butler, the Commonwealth's attorney in the Twenty-fourth District, and appellee, A. B. Stephens, Commonwealth's attorney in the Thirty-first District, as to who was entitled to administer the duties of that office in the county of Floyd, they each claiming the right. The decision in the court below was in favor of Stephens.

We waive the question of practice presented by which the controversy was brought before the court, having come to the conclusion that the judgment must be affirmed on the merits of the case as they are made out in the record.

The validity of the act of 1904 (Sess. Acts 1904, p. 125, c. 51) is assailed on two grounds: First, it is contended that no new rural district can be created unless it contains at least 60,000 population; second, that, as the effect of the act is to diminish appellant's salary or official compensation, it is repugnant to section 235 of the Constitution, and as to appellant is void. By section 97 of the Constitution a Commonwealth's attorney is to be elected in each judicial district. The Constitution of 1891 did away with all courts of general original jurisdiction save circuit courts. By section 128 the Legislature was required, at its first session after the Constitution went into effect, to divide the State into judicial districts. It was in that section provided: "In making such apportionment no county shall be divided, and the number of said districts, excluding those in counties having a population of one hundred and fifty thousand, shall not exceed one distroct for each sixty thousand of the population of the entire State." Section 132 of the Constitution reads: "The General Assembly, when deemed necessary, may establish additional districts; but the whole number of districts, exclusive of counties having a population of one hundred and fifty

thousand, shall not exceed at any one time one for every
sixty thousand of population of the State according to the
last enumeration." Section 134 is: "The judicial districts
of the State shall not be changed except at the first session
after an enumeration, unless upon the establishment of a new
district." Section 137 of the Constitution provides that
counties having a population of 150,000 or over shall consti-
tute a district, and be entitled to four judges. It also pro-
vides that the General Assembly may increase the number
of judges in such counties, but not to exceed one for each
increase of 40,000 population, "to be ascertained by the last
enumeration." By section 138 it is further provided that
each county having a city of 20,000 inhabitants, and a pop-
ulation, including said city, of 40,000 or more, may consti-
tute a district, and when its population reaches 75,000 the
General Assembly may provide that it shall have an addi-
tional judge, and may have a judge for each additional 50,000
above 100,000. From these sections it is argued that there
can be no district created, except in counties having a pop-
ulation of 150,000 or over, or in counties having a popula-
tion of 40,000 and a city of 20,000, unless such district con-
tains at least 60,000 population. It is also urged that, as
frequent reference is made in these sections of the Constitu-
tion "to the last enumeration," it was intended to adopt the
federal census enumeration as the sole evidence of the requi-
site number of population for determining the matter of di-
viding the State into judicial districts. There was not at
the time of the adoption of the Constitution, nor has there
since been, any provision of law for taking an enumeration
by the State. It may therefore be conceded that these refer-
ences were to the federal census. It may also be assumd
that the population of the entire State and of each of its

counties, as shown by the federal census, is a matter of which
the courts will take judicial notice.

Proceeding upon these assumptions, it is found that the
last federal census shows that the State of Kentucky con·
tained a population in 1900 of 2,147,174. The only county in
the State then having a population of 150,000 or over was
Jefferson, with a population of 232,549. This would have
entitled the State to as many as thirty-one judicial districts
outside of the county of Jefferson. At that time, and until
the creation of the Thirty-first District, there were only
thirty districts, including the county of Jefferson. Instead
of the requirement being that each district must contain at
least 60,000 population, save as expressly excepted, the Con-
stitution carefully leaves the number of population to the
wisdom of the General Assembly. In section 128, where the
duty is imposed to divide the State into judicial districts, it
is said: "The General Assembly, having due regard to the
territory, business and population, shall divide the State
into a sufficient number of judicial districts to carry into
effect the provisions of this Constitution concerning circuit
courts." So that we see that something in addition to popu-
lation was to enter into the consideration of the sizes of the
districts. The inhibition is not against the size of the dis-
tricts at all, except where single counties may constitute a
district. The total number of districts only was limited by
the population of the last preceding enumeration. Such was
the construction of the first General Assembly that convened
after the adoption of the Constitution. They then divided
the State into circuit judicial districts, thirty in number.
The last preceding census—that of 1890—gave the State of
Kentucky a population of 1,858,635. Jefferson county, then,
as now, the only county having as many as 150,000 popula-
tion, contained 188,598 inhabitants. If it was required by

the Constitution that each district except the counties which were singly entitled to be a district must contain at least 60,000 population, deducting the population of Jefferson, there could have been only twenty-seven other districts provided. Giving the counties of Kenton, Fayette, and Campbell each one district (they each being entitled to be a separate district), would have left only twenty-five districts that the State could have been apportioned into. Yet that General Assembly created thirty districts, making one district each for Jefferson, Kenton, Campbell, and Fayette counties. (It will be observed that in determining when single counties may be created into separate districts the federal census is not adopted as the basis of ascertaining the population. Section 137.) The same session of the Legislature created the Twenty-third District (in which Magoffin county was placed) and the Twenty-fourth. Neither of these districts contained in 1890, according to the census of that year, as many as 60,000 population. The Twenty-third had only 42,122, and the Twenty-fourth 49,308. A number of other districts in the State, having more than one county, also contained less than 60,000 population. This apportionment has never been questioned, so far as we know. The fact that the Thirty-first District contained only 36,292 does not affect the validity of the act creating it, as the population of the entire State, by the last census, was such as to empower the Legislature to create an additional district, if, in their wisdom, the conditions required it. Whether they did or not is a matter entirely beyond the jurisdiction of this court to look into.

Section 235 of the Constitution reads: "The salaries of public officers shall not be changed during the term for which they were elected. . . ." By section 98 it was provided that: "The compensation of the Commonwealth's attorney

shall be by salary and such percentage of fines and forfeitures as may be fixed by law, and such salary shall be uniform, in so far as the same shall be paid out of the State treasury, . . . not to exceed five hundred dollars per annum." By statute Commonwealth's attorneys receive in addition to the $500 salary, payable out of the treasury, 50 per cent. of all fines and forfeitures recovered in the circuit courts of their districts. Appellant contends that by taking from his district the counties of Knott and Floyd his salary is diminished. It may be conceded that the percentage of fines and forfeitures given by statute to Commonwealth's attorneys are to be regarded as salary, as the term is used in section 98 of the Constitution. The Legislature would not, therefore, have the power to provide a less or greater percent. of fines and forfeitures to the Commonwealth's attorneys, or increase or diminish the salary of $500 payable out of the treasury. But that is the extent of the limitation. Any person elected to the office of Commonwealth's attorney takes it subject to the constitutional right expressly reserved to the Legislature to make new districts as the necessities and population of the State may require. The exercise of this power by the Legislature is presumed to be in behalf of the State and its citizens. Commonwealth's attorneys affected by its exercise must yield to it as one of the conditions fixed by the Constitution upon which they took their offices.

Wherefore the judgment of the circuit court is affirmed.