## Carl v. Thiel, Sheriff.

(Decided November 20, 1925.)

### Appeal from Kenton Circuit Court.

1. Constitutional Law—Pleadings of Sheriff Held Not to Entitle Him to Attack Validity of Act as Reducing His Compensation.—In action to enjoin sheriff as tax collector from declaring taxes delinquent, answer attacking validity of Acts 1924, c. 108, on ground that his compensation would be reduced in violation of Constitution sections 161, 235, is insufficient, in absence of allegation that his entire compensation was less than constitutional limit.

2. Constitutional Law—Sheriff Held Not Entitled to Assert Invalidity of Statute as Reducing Compensation During His Incumbency in Office.—Since Acts 1924, c. 108, providing that state and county taxes, due and collectable for the year 1925, should not become delinquent until after December 31st of that year, instead of December 1st of each year, under the law as it existed, does not change the fixed salary of sheriff nor change scale of his fees or commissions, sheriff held not entitled to assert the invalidity of such act within Constitution sections 161, 235, as reducing his compensation during his incumbency in office, notwithstanding the possible effect of such statute to reduce services to be performed by him or to diminish aggregate amount upon which he would be entitled to receive his fixed fees and commissions.

3. Officers—Constitutional Provision, Prohibiting Reduction of Compensation of Officer During His Incumbency in Office, as Applied to Sheriff, Does Not Prohibit Legislation Changing Remedy of Collection of Taxes.—Constitution sections 161, 235, prohibiting a reduction of compensation of an officer during his incumbency in office, as applied to a sheriff who receives certain fees for collecting delinquent taxes, does not prohibit legislation changing the remedy of the collection of taxes, so long as the percentage of commissions and fees fixed at the time the sheriff is inducted into office are not changed.

4. Taxation—Sheriff whose Term of Office Expires on Day when Taxes Become Delinquent is Relieved of Liability on Bond for Taxes Receipted for by Showing Amount of Uncollected Delinquent Taxes.—Under Acts 1924, c. 108, making uncollected taxes of a

year delinquent after December 31st of that year instead of December 1st, as was the case under former law, sheriff receipting within Ky. Stats. 1922, section 4239a, for tax bills, books, and stubs, and whose term of office expires December 31st, thereby precluding him from collecting such delinquent taxes, is relieved of liability on his bond by showing among other things, the amount of uncollected delinquent taxes, thereafter collectable by distraint or levy.

RICHARD T. VON HOENE for appellant.

O. M. ROGERS for appellee.

Opinion of the Court by Judge Thomas—Reversing.

As a citizen and taxpayer of Kenton county, the appellant and plaintiff below, Joseph Carl, brought this equity action in the Kenton circuit court to enjoin appellee and defendant below, who is the sheriff of the county, from proceeding to distrain personal property or to levy upon and sell real property in the enforcement of the collection of the state and county taxes during the month of December, 1925, and from declaring taxes uncollected by December 1 delinquent and from collecting either interest or penalties on such taxes at any time during that month, all upon the ground that defendant as sheriff of the county and whose duty it is to collect such taxes, was threatening to and would proceed in the manner indicated unless enjoined by the court, and that such threatened action on his part would be contrary to chapter 108, page 312, of the Session's Acts of 1924, wherein it is provided that state and county taxes due and collectible in the year 1925 should not become delinquent until after December 31 of that year, instead of December 1 under the law as it existed at the time of the enactment of that chapter.

A demurrer filed by defendant to the petition was not acted on, and he filed his answer in which he alleged that the 1924 act was unconstitutional and void, especially as to him during his incumbency in office, because according to his past experience he would be deprived of enforcing the collection of about $8,000.00 of delinquent taxes before his term of office expired and upon which he would receive fees and commissions amounting to about $500.00, and that the effect of the 1924 act would be to reduce his compensation after he had been elected to and installed in office contrary to the pro-

visions of sections 161 and 235 of our Constitution. It was, furthermore, alleged and insisted on, that under the provisions of section 4239a of Carroll's 1922 Kentucky Statutes, the sheriff and his surety become responsible for the total of all tax bills, books and stubs for which he is required to receipt the county court clerk by the terms of that section, and that if the 1924 act is to be enforced during his term so as to deprive him from proceeding to declare any of the unpaid taxes delinquent, from and after which only he may proceed to enforce their collection with interest and penalties, then it would have the effect to impose a liability on him and his sureties without an opportunity for him to relieve himself against it. A demurrer filed to the answer was overruled and plaintiff declining to plead further, his petition was dismissed, to reverse which he prosecutes this appeal.

Before addressing ourselves to the question as to whether the 1924 act contravenes the provisions of either of the two sections of the Constitution referred to, as applicable to defendant, we deem it proper to say that his pleading was not sufficient to entitle him to rely on that objection to the validity of the act, since he nowhere alleged that the aggregate of all salary, fees and commissions of his office for the year 1925 up to the time of filing his answer, or to December 1, aggregated less than his constitutional salary of $5,000.00 and reasonable compensation for his necessary deputies, so as to show that the additional $500.00 of which he claims to be deprived through the operation of the 1924 act would be necessary in order to enable him to collect from the emoluments of his office the maximum constitutional sum of $5,000.00 for himself and reasonable compensation for his deputies. It requires no argument to show that defendant would not be affected by the provisions of the act he attacks, unless he was entitled to retain the extra $500.00 of which he claims to be deprived because of its provisions. Shipp v. Bradley, 196 Ky. 523, and 210 Ky. 51.

Independently, however, of that proposition we think there is no merit in the point advanced and now under consideration. Learned counsel for appellee relies on the cases of Bright v. Stone, 20 Ky. L. R. 817; Thomas v. Hager, 120 Ky. 428; Slayton v. Rogers, 128 Ky. 106; Bosworth v. Ellison, 148 Ky. 708; Anderson v. Burton, 174 Ky. 459, and Brown v. Laurel County Fiscal Court, 175 Ky. 747. He could have more than sextupled that list,

as will be seen from the notes to the two sections of the Constitution referred to in the 1922 edition of our statutes, but counsel's trouble lies, not in the fact of the unsoundness of the cases to which he did or could have referred, but in the fact that the doctrine announced in all of them does not fit the facts of this case. In some of them a fixed salary of the officer at the time he was inducted into office was attempted to be changed during his term of office, either by being decreased or increased, and we held that such an effort plainly contravened the constitutional provisions and did not apply to the current term of any officer who had become such before the attempted increase or decrease. All the others of those cases were where the scale of fees or commissions for specified services were attempted to be altered or changed during the term of the officer to which they applied, and after he had taken office, which plainly contravene section 161 of the Constitution; while section 235 is more applicable to fixed salaries; but we have neither of such cases here. The statute does not pretend to alter or change in any manner the scale of defendant's commissions for the collection of state or county taxes in his county; and the only possible and remote effect that the statute could have on the aggregate of defendant's fees and commissions for collecting any part of the taxes due in 1925, is the probability that some of the taxpapers of Kenton county will suffer themselves to become delinquent so as to incur the statutory interests and penalties, and which is alleged in the petition to aggregate as much as $8,000.00, which necessarily is only based on the opinion of defendant. However, if that opinion was an absolutely demonstrated fact it would still invade no constitutional right of defendant, since as long as there is no change in his fixed salary, nor any change in the scale of his fees or commissions, he has no right of complaint, although the statute which he attacks may have the possible effect to reduce the services to be performed by him, or diminish the aggregate amount upon which he is entitled to receive his fixed fees and commissions.

In the case of Purnell v. Mann, 105 Ky. 87, it was argued that what was then known as the Goebel Election Law took away from the officers who composed the canvassing board of elections prior thereto, their fees and compensations as members of such canvassing board by imposing that duty upon a canvassing board created by that statute, all of which was done during the terms of

the members of the old canvassing board, and that the act for that reason was unconstitutional, at least to the extent that its effect was to deprive the members of the old board of their compensation as such. But this court in disposing of that question adversely to that argument said, "The act (Goebel Election Law) does not, as argued, violate section 161 of the Constitution, which forbids the compensation of any city, county, town, or municipal officer being changed during his term of office; for the duties imposed by the general election law upon the various county officers do not, except in virtue of a repealable statute, pertain at all to several officers, and, of course, when they are by an amendatory statute relieved of these duties, their per diem pay ceases without at all involving a change of compensation in meaning of section 161."

In the case of Butler v. Stephens, 119 Ky. 616, the facts were that the legislature created a new circuit court judicial district and took from the then 24th judicial district two counties, and put them into the newly created district. The constitutionality of the act was attacked by Butler, the then Commonwealth's attorney of the 24th judicial district, upon a number of grounds, one of which was that the taking of the two counties away from his district and changing it from what it was when he was elected and qualified, during his term of office, would deprive him of the percentages of his fines and forfeitures in the two counties so taken away, and which would be contrary to the provisions of the two sections of the Constitution here relied on. But in denying that contention the court conceded that the creating of the new district would have that effect and stated in its opinion that the legislature did not possess the right (as it had not done in that case) to reduce the percentages of fines and forfeitures due the Commonwealth's attorney during his term of office, and then said, "But that is the extent of the limitation. Any person elected to the office of Commonwealth's attorney takes it subject to the constitutional right expressly reserved to the legislature to make new districts as the necessities and population of the state may require. The exercise of this power by the legislature is presumed to be in behalf of the state and its citizens. Commonwealth's attorneys affected by its exercise must yield to it as one of the conditions fixed by the Constitution upon which they took their offices."

In the case of Duff v. Moseley, 169 Ky. 61, the jailer of Leslie county questioned the constitutionality of chapter 89 of the Acts of 1914, which repealed the theretofore section 1379 of the Kentucky Statutes, and which latter section was in force at the time the jailer qualified as such. Under that section he was entitled to a fixed sum for dieting prisoners confined in the jail of the county. The amendatory or repealing act provided that prisoners so punished by imprisonment, if the judgment of conviction so provided, might be worked on the public roads and not confined in the jail, and which the jailer contended violated the provisions of section 161 of the Constitution, in that it deprived him of the fees for dieting the prisoners, because it removed them from confinement therein; but in denying that contention we said, "It (section 161 of the Constitution) never contemplated that the legislature might indirectly affect a jailer's fees by changing the method of punishing criminals. The jailer has not such vested right to keep and feed prisoners as to prevent the legislature from changing the method of punishing them, or the method by which they may satisfy their fines." It was then stated that if the legislature had attempted to change the per diem fee for dieting prisoners actually confined in the jail a different question would arise, and then said, "But changing the custody of the prisoners does not, within the meaning of section 161, *supra*, amount to a change in the compensation of the jailer, which is by fees fixed by law, and remain unchanged by the statute which changed the custody."

It will thus be seen that an incumbent in office may not complain of legislative action which may have a tendency to deprive him of fees to which he was entitled when inducted into office, unless the particular statute complained of reduced the rate of percentage of his compensation for the particular service, or the scale of fees for that service, and that his constitutional rights are not invaded by a reduction of the amount of service, or the total amount upon which his statutory percentage is calculated. To hold otherwise would prevent the legislature from reducing the rate of taxation at any time within the four years for which the collector of taxes was elected, which clearly could not be maintained by any course of reasoning, but which has been done at the will of the legislature at any time it saw proper since the adoption of our Constitution and without ever being questioned. The

position contended for by appellee, if correct, would also prevent the changing of the boundaries of a county, or of a municipality during the term of office of the collector of taxes therein, since such a change if the boundary was reduced would correspondingly curtail the amount of taxable property within the taxing authority from the taxes on which his commissions were based and thereby reduce the aggregate of fees for the collection of the taxes. Manifestly, no such result was contemplated by either of the sections of the Constitution referred to. Similar illustrations almost innumerable might be cited to demonstrate the fallacy of the contention.

The conclusion reached above is strengthened when it is remembered that the time when taxes become delinquent, the imposition of interests and penalties after that time, and the furnishing of coercive process for their collection from thenceforward, are all matters pertaining to the remedy for their collection, and it could hardly be possible that it was ever intended by either of the two sections of our Constitution to limit, curtail or impair the power of the legislature at any time to change or alter such remedy, except to the extent hereinbefore referred to as to the percentage of commissions and fees fixed at the time the collector became such. The argument of counsel for defendant necessarily denies such authority in the legislature and compels it to refrain from enacting any change in the remedy for the collection of taxes during the incumbency of the one who collects them, and which we think is wholly untenable and would extend the scope of the two sections of the Constitution entirely beyond the intention and purpose of the convention and the people in adopting them. It is, therefore, our conclusion that the 1924 act does not possess the vice contended for by counsel for defendant, and the court was in error in holding otherwise.

If, however, we were in error in so concluding, there yet remains another suggestion which might be plausibly urged in support of the injunction prayed for herein, and it is: That the taxpayer of the Commonwealth should not be deprived of the benefits of the 1924 act solely because it might indirectly diminish the compensation of the collector, and even illegally so, since in that event the collector would have his right against the taxing authority rather than to deprive the taxpayer of the benefits of the statute enacted in his behalf. Since, however, it is not necessary for the purposes of this opinion to so

judicially declare, we refrain from doing so and insert this paragraph as only a suggestion.

Disposing of the other contention, that the sheriff and his surety would be responsible for all taxes for which he receipted to the county clerk, except those which were delinquent and could *not* be collected, and for all of which he is required to make settlement at the expiration of his term, it may be said that such requirements were necessarily modified by implication by the provisions of the 1924 act involved in this case. Therefore, at the expiration of defendant's term he may make his settlement, showing, among other things, the amount of uncollected delinquent taxes, although yet collectible by distraint or levy, and thereby obtain his acquittance the same as he could do before the enactment of the 1924 act, since neither the state nor the county could exact any more from him after he was deprived by the provisions of the 1924 act of the right to enforce collections by levy or distraint.

Wherefore, the judgment is reversed, with directions to set it aside and to enter one perpetually enjoining defendant, as prayed for in the petition. The whole court sitting.