## Shanks, Auditor of Public Accounts v. Johnson, Tax Commissioner.

(Decided May 13, 1927.)

### Appeal from Franklin Circuit Court.

1. Taxation.—Acts 1924, chapter 109, section 6, providing that county tax commissioner's compensation should be based on total value of assessment made by him as finally equalized by county board of supervisors, held intended to amend Ky. Stats., 1922, section 4042a-8 (Acts 1918, chapter 11, section 3), as amended by Acts 1922, chapter 101, basing compensation on assessment as finally equalized by board after changes by state tax commission, so as to require that recopying of amended section as appendage to new section be ignored.

2. Officers.—Acts 1924, chapter 109, section 6, fixing county tax commissioner's compensation on basis of assessments by them as finally equalized by county board of supervisors, held not unconstitutional as changing compensation of commissioners then in office under Ky. Stats., 1922, section 4042a-8, basing compensation on assessment as finally equalized by such board after changes by state tax commission; final action of board remaining basis of compensation.

3. Taxation.—Under Acts 1924, chapter 109, section 6, county tax commissioner was entitled to no compensation for years 1924 and 1925, based on increased assessment of his county by state tax commission under such act.

FRANK E. DAUGHERTY, Attorney General, CHAS. F. CREAL, Assistant Attorney General, and JOHN FARMER for appellant.

LESLIE W. MORRIS and E. C. HYDEN for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

This case involves the compensation of the appellee as the tax commissioner of Perry county for the years 1924 and 1925. Prior to these years the county tax com-

missioners of the various counties of the state had been paid their compensation based on the percentages prescribed in section 4042a-8 of the Kentucky Statutes, 1922 edition, and on the assessment of property as finally equalized by the county board of supervisors after its work had been gone over by the state tax commission and the latter had ordered such raises or adjustments as it deemed proper. The Attorney General argues that this practice was improper and unlawful, and that the county tax commissioners should have been allowed compensation only on the assessment as made by him. The Attorney General is in error about this, and the practice that was pursued was correct. The statute plainly provided that the county tax commissioner should not present his account for services until the state tax commission had passed upon the assessment of property in his county, and had certified the total amount at which said county had been assessed by it to the county board of supervisors. The statute further plainly provided that, when his account was presented, the county court should approve and allow 50 per cent. of the amount due him "based upon the certification of the state tax commission." Although it is true that later on in this section of the statute, when it came to provide for the payment of the remaining 50 per cent. due the county tax commissioner, it read that the same "shall be based on the total value of the assessment made by him as above required," yet this provision did not conflict with what we have said above, since such language is to be read in the light of the procedure then in force. The county tax commissioner, under the law then in force, was required to meet with the county board of supervisors in its work of equalizing the county assessment, and especially was he required so to meet when the state tax commission had certified to such county board any raise or adjustment of the county tax lists. He had many duties to perform in such equalization, and therefore the last phrase, when read in the light of such procedure, does not conflict at all with the first phrase, which was that his percentage was to be based on the values as finally certified by the state tax commission. Such certification had to be carried into effect by the county board of supervisors, and the law required the county tax commissioner to assist this board in its work of making the equalization ordered by the state tax commission. The assessment was made by the county tax

commissioner. The total values of it were varied by the action of the county board of supervisors under the order of the state tax commission. However, even in this the county tax commissioner performed many duties. But his compensation was based on his assessment and on the total values as finally found by the county board of supervisors under the direction of the state tax commission. There is then no conflict in the statute.

In 1924, the Legislature made some radical changes in the method of equalizing assessments. By chapter 109 of the Acts of that year the state tax commission was given power to itself equalize assessments, not only as between counties, but also within any particular county itself. It was also given power to raise or lower the assessments of particular individuals or particular classes of property or any item of such classes. Its work when done was no longer required to be certified to the county boards of equalization for them to carry the same into execution. On the contrary, the act provided that the state tax commission should report its work to the fiscal courts of the counties so that they could make such protest in the courts as they saw fit. The act also provided that the state tax commission should report to the auditor the total assessed value of the property of the various counties and the amount of taxes due from the counties. The auditor in turn charges the sheriff with such taxes and notifies the various county clerks of the amount of such taxes. By section 6 of this act it was provided that section 3 of chapter 11 of the Acts of 1918 (being section 4042a-8 of the Kentucky Statutes, 1922 edition), as amended by chapter 101 of the Acts of 1922 should be amended "so as to read as follows." We do not insert the amendment, as it would consume too much space. Suffice it to say that the amendment provided that the compensation of the county tax commissioner should be based "on the total value of the assessment made by him as finally equalized by the county board of supervisors." However, at the close of the amendatory section in the act there was added this sentence: "So that said section as amended shall read as follows." And then there was copied and appended to the amendatory section the old section which the amendatory section sought to repeal or amend. It is plain that the copying of the old section was oversight, because, unless the old section be ignored, the Legislature had done a foolish, vain, and absurd thing.

In 25 R. C. L. 1011, it is said:

> "It has sometimes been stated as a rule of construction, that where there is an irreconcilable conflict between different provisions of a statute, that provision which is last in order of position will prevail as being the latest expression of legislative will. But there seems to be no substantial basis for such a rule; for, as all the provisions of an act are adopted at the same time, there can be no priority in point of time because of their relative position. At any rate the rule is very seldom applicable; it is applicable only where there is an irreconcilable conflict between the different sections of the same act, and no reasonable construction will harmonize the parts. Certainly this purely arbitrary rule, which, if it exists at all, springs rather from the necessity of some rule in peculiar cases than for any sound reason, is not to be applied to the defeat of the manifest purpose of the lawmakers where that purpose can be gathered from the context."

To the same general effect is Golightly v. Bailey, 218 Ky. 794, 292 S. W. 320. It is perfectly plain that the Legislature intended to amend what was old section 4042a-8. Therefore, construing section 6 of chapter 109 of the Acts of 1924, to arrive at that manifest purpose, the recopying of the old section as an appendage to the new section should be ignored. This section 6 now appears as section 4042a-8 of the 1926 Supplement to the Statutes.

It will be noted that the new act, so far as pertinent to our discussion, definitely fixes the compensation of a county tax commissioner on the basis of the assessment as made by him and as finally equalized by the county board of supervisors. He is not allowed any compensation based on any raise thereafter made by the state tax commission. It may also be added parenthetically that his compensation is not reduced by any reduction which might thereafter be made by the state tax commission. It is then argued that, if the act be construed so as not to allow county tax commissioners compensation based on any raise made on the assessment by the state tax commission, as we have so construed, it and if the act of 1924 be held applicable to the county tax commissioners then in office, it is then unconstitutional because it changes

their compensation, since prior to that act their compensation was based on the assessment as finally equalized by the state tax commission. In Carl v. Thiel, Sheriff, 211 Ky. 328, 277 S. W. 485, we held that an incumbent in office may not complain of legislative action which may have a tendency to deprive him of fees to which he was entitled when inducted into office, unless the particular statute complained of reduced the rate of percentage of his compensation for the particular service or the scale of fees for that service, and that his constitutional rights are not invaded by a reduction of the amount of service or the total amount upon which his statutory percentage is calculated. A number of cases bearing on this proposition are collected and considered in this Thiel case. For instance, it was held that jailers could not complain because a law was passed providing for the working of prisoners on the public roads rather than for their confinement in the county jail, thus affecting indirectly the income of the jailers derived from keeping and dieting the prisoners. Duff v. Mosley, 169 Ky. 61, 183 S. W. 231. Nor could the commonwealth's attorney object to the reduction of the size of his district. Butler v. Stephens, 119 Ky. 616, 84 S. W. 745, 27 Ky. Law Rep. 241.

Prior to the 1924 act, the compensation of the county tax commissioners was based on the assessment as finally equalized by the county board of tax supervisors, so equalized perhaps at the direction of the state tax commission, but, whether at the latter's direction or not, so equalized by the county board of tax supervisors. The basis on which the compensation of the county tax commissioners is figured is not changed by the 1924 act. He still gets his compensation based on the final action of the board of county tax supervisors. The fact that the final action of the state tax commission is no longer enforced through the county board of supervisors does not alter the case. It is, under the Thiel, Duff, and Butler cases, entirely constitutional to thus indirectly affect the compensation of the county tax commissioners. The Legislature by the 1924 act has not changed the percentage which they got nor the basis on which the percentage is figured. The final action of the county board of supervisors was such basis prior to the 1924 act. It still is. It is true that the final action of such boards is no longer affected by what the state tax commission does, but to thus indirectly affect the compensation of the county tax

commissioner does not unconstitutionally affect such compensation any more than did the working of the prisoners on the county roads instead of confining them to the jails unconstitutionally affect the compensation of jailers.

It results, therefore, that the appellee was entitled for the years 1924-25 to no compensation based on the raise of the assessment of his county made by the state tax commission under the 1924 act.  As the lower court held otherwise, its judgment must be reversed, with direction to dismiss appellee's petition.

Whole court sitting.